ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY - 6 2009

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3:08-CR-230-D |
| | § | **(Supersedes July 23, 2008 Indictment)** |
| JOSEPH KELLY LARA | § | |
| a/k/a Nick DeAngelis Mancuso (1) | § | |

## INDICTMENT

The Grand Jury Charges:

## **Introduction**

1.      Beginning in or about May 2003 and continuing until on or about January 7, 2005 ("the Relevant Period"), in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Joseph Kelly Lara a/k/a Nick DeAngelis Mancuso** ("the Defendant"), aided and abetted by B.L.C., a coconspirator not named as a defendant in this Indictment, knowingly and willfully planned and executed a scheme, device, contrivance, and artifice to defraud investors and financial institutions.

2.      During the Relevant Period, in the Dallas Division of the Northern District of Texas and elsewhere, the Defendant also conspired with B.L.C. to commit securities fraud, an offense against the United States, in violation of 18 U.S.C. §§ 1348 and 1349.

**Superseding Indictment – Page 1**

**<u>Manner and Means of the Scheme and Conspiracy</u>**

3.      During the Relevant Period, in the Dallas Division of the Northern District of Texas and elsewhere, the Defendant, aided and abetted by B.L.C., employed the following manner and means in furtherance of the device, contrivance, scheme and artifice to defraud and the conspiracy to commit securities fraud.

Creating a Fictitious Identity:
<u>Securities Attorney Nick DeAngelis Mancuso</u>

4.      In or about 2003, the exact date being unknown to the Grand Jury, the Defendant, whose true legal name was Joseph Kelly Lara, forged and fabricated, or caused to be forged and fabricated, Arizona state court papers purporting to change his legal name from Joseph Kelly Lara to Nick DeAngelis Mancuso.

5.      By presenting those papers, or causing them to be presented, to the Texas Department of Public Safety, the Defendant fraudulently obtained Texas Identification Card Number 1527**** in the name Nick DeAngelis Mancuso, bearing a photograph of the Defendant.

6.      During the Relevant Period, the Defendant falsely held himself out to investors, financial institutions and others as Nick DeAngelis Mancuso and used the Texas Identification Card he fraudulently obtained in that name, well knowing that his true legal name was Joseph Kelly Lara.  By identifying himself as Nick DeAngelis Mancuso, the Defendant concealed the fact that he, while using the name Joseph Kelly Lara, had served a term of imprisonment in Arizona for fraud and theft.

7.      In or about 2004, the exact date being unknown to the Grand Jury, the Defendant obtained two counterfeit diplomas purporting to be from the University of Minnesota and purporting to confer an MBA degree and a law degrees on Nick Mancuso. At various times during the Relevant Period, the Defendant, claiming to be Nick Mancuso, knowingly misrepresented to investors, banks, and others:  that he had received a law degree from the University of Minnesota; that he was an attorney specializing in securities law; that he had received an MBA degree from the University of Minnesota; and that he had enjoyed a successful and lucrative career in the financial industry in New York City.  On all of those occasions, the Defendant well knew that he had not received those degrees or practiced those professions.

### Creating a Fictitious Investment Firm: "Atlantic Equity & Investments, LLC"

8.      In or about May 2003, M.M., a person known to the Grand Jury, traveled to Texas from Arizona at the Defendant's direction, to make certain business arrangements for the Defendant.  On or about May 13, 2003, acting at the Defendant's direction, M.M. created Northern Atlantic Equity and Investments, LLC ("Northern Atlantic"), a Texas limited liability company, by filing or causing to be filed Articles of Organization with the Texas Secretary of State.  The articles identified Nick Mancuso as the registered agent and a manager of Northern Atlantic.  M.M. also opened one or more accounts for Northern Atlantic at Compass Bank in or about May 2003.

9.    On or about January 22, 2004, the Defendant, acting as Nick Mancuso, created Lion's Share Holdings, LLC ("Lion's Share"), a Texas limited liability company, by filing Articles of Organization with the Texas Secretary of State.  The articles identified Nick Mancuso as the organizer and one of the managers of Lion's Share.

10.    The Defendant frequently disregarded the separate corporate identities and legal names of Northern Atlantic and Lion's Share, referring to Northern Atlantic as "Atlantic Equity and Investments" or as "Atlantic Equity and Investments DBA Lion's Share Holdings."  (Hereafter, this Indictment will sometimes refer to the entities operated by the Defendant jointly as "the purported investment firm.")

11.    From in or about December 2003 until the end of the Relevant Period, the Defendant leased and used office space for the purported investment firm in Irving, Texas, and maintained one or more bank accounts at Compass Bank.

12.    Starting at least as early as March 2004 and continuing through the remainder of the Relevant Period, the Defendant hired and employed office staff to work in the office of the purported investment firm.

13.    In his personal office space at the offices of the purported investment firm, the Defendant prominently displayed the counterfeit University of Minnesota diplomas that purported to confer an MBA degree and a law degree on Nick Mancuso.

14.    The Defendant caused to be printed, and distributed to potential investors and others, promotional materials for "Atlantic Equity and Investments, LLC, A Private Equity Investment Firm." Those promotional materials identified Nick Mancuso as the "Managing Member" of the purported investment firm, and falsely stated that "Mr. Mancuso is a graduate of the University of Minnesota, Walter Mondale School of Law (JD Law) and the University of Minnesota, Carlson School of Business Management (MBA Finance)."

15.    Through the purported investment firm, the Defendant obtained money from investors by promising to invest it in stocks of various companies, including Google, Inc. ("Google"). The Defendant caused to be printed and distributed to investors a Customer Account Agreement that referred to purchases of stock and the manner in which stock trades would be executed.

16.    In fact, however, the Defendant never used investor funds to purchase stocks on behalf of investors. The stock market investments were fictitious, as the Defendant well knew.

17.    In order to mislead and deceive investors about the use of their funds to purchase stocks, including Google shares, the Defendant directed B.L.C. to pose as a fictitious stock broker and assure investors that their funds were being invested in stocks. Acting at the Defendant's direction, B.L.C. did so on a number of occasions.

18.    Although the purported investment firm was fictitious, the Defendant maintained and exhibited a lifestyle consistent with financial and professional success. Using investor funds and other funds that he obtained fraudulently, the Defendant drove Mercedes Benz and BMW automobiles, resided in a luxury penthouse apartment in the Las Colinas area of Irving, Texas, and spent extensively on travel and entertainment.

### Fictitious Sale of Google Shares to K.S.

19.    In or about August 2004, the Defendant, through a business associate, offered to sell shares of Google to K.S., a person known to the Grand Jury, and K.S. agreed to purchase 2000 shares. On or about August 21, 2004, K.S. paid for 2000 Google shares with a $170,000 check made payable to Atlantic Equity & Investments, LLC.

20.    On or about August 26, 2004, the Defendant sent, or caused to be sent to K.S. via United States mail or a commercial carrier, a "Confirmation Letter" that stated: "We are in receipt of your funds/and or wire transfer in the amount of $170,000, for the purchase of 2000 shares of Google IPO at $85.00 a share."

21.    In fact, the money paid by K.S. to Atlantic Equity & Investments, LLC was not used to purchase Google shares or other securities. Instead, the Defendant secretly diverted the money, or caused it to be diverted, to uses that K.S. did not authorize.

22.    On or about September 16, 2004, the Defendant caused to be sent to K.S., by United States mail or commercial carrier, a letter on Atlantic Equity & Investments, LLC letterhead, stating that Google shares purchased for K.S. had been sold, and that K.S. would receive $25,425.70 in trading profits.

23.    K.S. never received the $25,425.70 or any other money in return for his purported investment in Google shares. K.S. lost the entire $170,000 that he paid to Atlantic Equity & Investments, LLC.

24.    In connection with this transaction, the Defendant communicated with K.S. on a number of occasions, both by telephone and by electronic mail messages, knowingly misrepresenting to K.S. that he was an attorney and an investment professional, and that he had a relationship with Google executives.

<u>Fictitious Sale of Google Shares to R.S.</u>

25.    In or about August 2004, the Defendant knowingly misrepresented to R.S., a person known to the Grand Jury, that he was Nick Mancuso, an attorney specializing in securities law, who had worked in the financial industry in New York City, and that he had received Google shares as a result of his relationship with Google managers.

26.     The Defendant offered to sell Google shares to R.S., and on or about August 24, 2004, R.S. wired $42,500 from her bank account in California to an account in the name of Atlantic Equity & Investments, LLC at Compass Bank in Dallas, for the purchase of 500 shares of Google.

27.     The Defendant did not purchase Google shares with the $42,500 that R.S. wired to the account of Atlantic Equity & Investments, LLC.  Instead, he secretly diverted the funds, or caused them to be diverted, to uses that R.S. did not authorize.

28.     On or about September 8, 2004, the Defendant sent or caused to be sent by mail or commercial carrier, from Dallas, Texas to R.S. in California:  a check from the Compass Bank account of Atlantic Equity Investments, LLC for $47,563.78; and a "Google Shares Report" purporting to show that the $47,563.78 paid to R.S. was her profit from the sale of her Google shares.

29.     On or about September 10, 2004, R.S. deposited the check for $47,563.78 into her bank account in California, and on or about September 17, 2004, R.S. wired $49,000 from that account to an account in the name of Atlantic Equity & Investments, LLC at Compass Bank in Dallas, for the purchase of 576 shares of Google.

30.     On or about October 4, 2004, the Defendant sent or caused to be sent by mail or commercial carrier, from Dallas, Texas to R.S. in California, a "Confirmation Letter" from Atlantic Equity & Investments, LLC, stating: "We are in receipt of your funds/and or wire transfer in the amount of $49,000, for the purchase of 576 shares of Google IPO at $85 a share."

31.     The Defendant did not purchase Google shares with the $49,000 that R.S. wired.  Instead, he secretly diverted the funds to uses that R.S. did not authorize, or caused them to be so diverted.  R.S. lost the entire $49,000.

### Misappropriation of Investment Funds from D.S.

32.     During the Relevant Period, the Defendant knowingly misrepresented to D.S., a person known to the Grand Jury, that he was Nick Mancuso, an attorney with a law degree from the University of Minnesota, and that he had worked in the securities business in New York City.

33.     In or about November 2004, D.S. invested $100,000 with the purported investment firm, which he knew as Atlantic Equity and Investments.  Based on the Defendant's representations and promises, D.S. believed the Defendant would use the money to buy stock for D.S.'s account.

34.     On or about November 2, 2004, the Defendant signed and sent, or caused to be sent, by United States mail or by commercial carrier to D.S. in Naples, Florida, a letter on Atlantic Equity & Investments, LLC letterhead, which stated:  "The purpose of this letter is to inform you that we are in receipt of your funds of $100,000 on this day of November 2, 2004.  Your account has been opened."

35.     The Defendant did not use the $100,000 invested by D.S. to purchase stock. Instead, the Defendant secretly diverted the funds, or caused them to be diverted, to uses that D.S. did not authorize, causing D.S. to lose the entire $100,000.

## Misappropriation of Investment Funds from A.A.

36.     In or about November 2004, via electronic mail messages, telephone conversations, and other means of communication, the Defendant knowingly misrepresented to A.A., a person known to the Grand Jury, that the Defendant held a law degree, had earned millions of dollars working as an attorney in the investment industry, and was currently managing an investment firm called Atlantic Equity & Investments, LLC.

37.     The Defendant offered to manage A.A.'s money through Atlantic Equity & Investments, LLC, and promised that he would purchase securities for A.A., including stock.

38.     On or about November 10, 2004, A.A. agreed to open an investment account at Atlantic Equity & Investments, LLC and delivered to the Defendant a personal check for $100,000, to be deposited into his account and used to purchase stock and other securities for his account.

39.     On or about November 11, 2004, the Defendant sent, or caused to be sent, to A.A. via United States mail or commercial carrier, a letter acknowledging receipt of A.A.'s $100,000 and stating that A.A.'s "account" had "been opened."

40.     The Defendant did not use the $100,000 to buy stock or other securities for A.A.'s account.  Instead, the Defendant secretly diverted A.A.'s funds, or caused them to be diverted, to uses that A.A. did not authorize, causing A.A. to lose the entire $100,000.

Loans Fraudulently Obtained from
First State Bank of Thermopolis, Wyoming

41.    In or about August 2004, the exact date being unknown to the Grand Jury, the Defendant met with an officer of First State Bank of Thermopolis, Wyoming ("FSB") at the offices of the Defendant's purported investment firm, which the Defendant identified to the FSB officer as Atlantic Equity & Investments, LLC.

42.    The Defendant knowingly misrepresented to the FSB officer that he was Nick Mancuso, an attorney specializing in securities law, and that he had been associated at one time with the New York City investment bank Goldman, Sachs & Co.

43.    The Defendant submitted to FSB a false, forged Statement of Financial Condition, purporting to have been prepared by a certified public accountant, which falsely represented the Defendant's net worth to be more than $18 million.

44.    Based on the Defendant's false and fraudulent representations, FSB made two loans to Nick Mancuso:  $35,145 on or about November 16, 2004; and $170,000 on or about December 21, 2004.  FSB wired the proceeds of both loans from Thermopolis, Wyoming to bank accounts in Texas.  FSB wired the proceeds of the $170,000 loan to an account in the name of Atlantic Equity Investments, LLC.

45.    The Defendant failed to repay the loans, causing significant losses to FSB.

46.    At all times during the Relevant Period, FSB was a bank whose deposits were insured by the Federal Deposit Insurance Corporation.

### Funds Fraudulently Obtained from Compass Bank

47.    The Defendant obtained from B.L.C. checks that both the Defendant and B.L.C. knew to be worthless, and deposited them in the account of Atlantic Equity and Investments, LLC at Compass Bank.

48.    B.L.C. knew and intended that the Defendant would commit fraud using the worthless checks that B.L.C. provided to the Defendant.

49.    Specifically, on or about December 16, 2004, the Defendant deposited one such check, made payable to "Atlantic Equity Investments" in the amount of $200,000, into the account of Atlantic Equity and Investments, LLC at Compass Bank.

50.    Because the check was worthless, Compass Bank suffered a financial loss.

51.    At all times during the Relevant Period, Compass Bank was a bank whose deposits were insured by the Federal Deposit Insurance Corporation.

## COUNT ONE
### Conspiracy to Commit Securities Fraud
(18 U.S.C. §§ 1348(1) and 1349)

From in or about May 2004, the exact date being unknown to the Grand Jury, and continuing until on or about January 7, 2005, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Joseph Kelly Lara a/k/a Nick DeAngelis Mancuso** ("the Defendant") did unlawfully, willfully, and knowingly combine, conspire, confederate and agree with B.L.C., a coconspirator not named as a defendant in this Indictment, to commit an offense against the United States, specifically Securities Fraud, a violation of 18 U.S.C. § 1348(1), as alleged in Count Two of this Indictment.

### Manner and Means

The Grand Jury adopts, re-alleges, and incorporates herein by reference all allegations set forth in Paragraphs 3 through 31 above as the Manner and Means of the conspiracy to commit Securities Fraud.

All in violation of 18 U.S.C. §§ 1348(1) and 1349.

COUNT TWO
Securities Fraud
(18 U.S.C. § 1348(1))

From in or about May 2003 until on or about January 7, 2005, in the Dallas

Division of the Northern District of Texas and elsewhere, the defendant, **Joseph Kelly**

**Lara a/k/a Nick DeAngelis Mancuso** ("the Defendant"), aided and abetted by B.L.C.,

knowingly executed and attempted to execute a scheme and artifice to defraud R.S., K.S.,

and others known to the Grand Jury, in connection with a security, specifically stock of

Google, Inc., an issuer which then had a class of securities registered under Section 12 of

the Securities Exchange Act of 1934, 15 U.S.C. § 78l.

## Manner and Means

The Grand Jury adopts, re-alleges, and incorporates herein by reference all

allegations set forth in Paragraphs 3 through 31 above as the Manner and Means of the

scheme and artifice to defraud.

In violation of 18 U.S.C. § 1348(1).

COUNTS THREE and FOUR
Securities Fraud
(15 U.S.C. §§ 78j(b) and 78ff)

For each of Counts Three and Four, the Grand Jury adopts, re-alleges, and

incorporates herein by reference all allegations set forth in Paragraphs 3 through 18 and

Paragraphs 32 through 40 above.  As to each of Counts Three and Four listed below, in

the Dallas Division of the Northern District of Texas and elsewhere, the defendant,

**Joseph Kelly Lara a/k/a Nick DeAngelis Mancuso** ("the Defendant"), willfully and

knowingly, by use of the mails and means and instrumentalities of interstate commerce, in

connection with the purchase and sale of the stock of public or private companies to the

investors identified below, directly and indirectly:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts and omitted to state material facts that
  were necessary in order to make statements that were made not misleading in light
  of the circumstances under which the statements were made; and

- engaged in acts, practices and courses of business that operated or would operate
  as a fraud or deceit on a person,

all as alleged in Paragraphs 3 through 18 and Paragraphs 32 through 40 above.

| Count | Date | Investor |
|-------|------|----------|
| 3 | November 1, 2004 | D.S. |
| 4 | November 10, 2004 | A.A. |

Each in violation of 15 U.S.C. § 78j(b), the penalty for which is found at 15 U.S.C.

§ 78ff.

## COUNT FIVE
Bank Fraud
(18 U.S.C. §§ 1344 and 2)

The Grand Jury adopts, re-alleges, and incorporates herein by reference all allegations set forth in Paragraphs 47 through 51 above.

On or about December 16, 2004, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Joseph Kelly Lara a/k/a Nick DeAngelis Mancuso** ("the Defendant"), aided and abetted by B.L.C., a coconspirator not named as a defendant in this Indictment,  knowingly and with intent to defraud, attempted to execute and did execute a scheme and artifice to defraud Compass Bank, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, and to obtain money and funds owned by and under the custody and control of Compass Bank by means of materially false and fraudulent pretenses, representations, and promises, by presenting and depositing, and causing to be presented and deposited, into an account at Compass Bank held in the name of Atlantic Equity and Investments and controlled by the Defendant, a check for $200,000, well knowing and intending that the bank account against which the check was drawn held insufficient funds to cover the check, and that, by presenting and depositing the check, and causing it to be presented and deposited, he would and did defraud, and fraudulently obtain money from, Compass Bank.

In violation of 18 U.S.C. §§ 1344 and 2.

**Superseding Indictment – Page 16**

## COUNTS SIX and SEVEN
### Bank Fraud
### (18 U.S.C. § 1344)

From in or about August 2004 and continuing until on or about December 21, 2004, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Joseph Kelly Lara a/k/a Nick DeAngelis Mancuso** ("the Defendant"), knowingly and with intent to defraud, attempted to execute and did execute a scheme and artifice to defraud First State Bank of Thermopolis, Wyoming ("FSB"), a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, and to obtain money and funds owned by and under the custody and control of FSB by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means

As the manner and means of the scheme and artifice to defraud, the Grand Jury adopts, re-alleges, and incorporates herein by reference all allegations set forth in Paragraphs 2 through 18 and 41 through 46 above.

### Execution

On or about each of the dates set forth below, in the Dallas Division of the Northern District of Texas and elsewhere, the Defendant, knowingly and with intent to defraud, attempted to execute and did execute the aforementioned scheme and artifice by obtaining a loan from FSB in the amount set forth below, based on the materially false and fraudulent pretenses, representations and promises set forth in Paragraphs 2 through

18 and 41 through 46 above.

| Count | Date | Amount |
|-------|------|--------|
| 6 | November 16, 2004 | $35,145 |
| 7 | December 21, 2004 | $170,000 |

Each a violation of 18 U.S.C. § 1344.

## COUNTS EIGHT and NINE
Wire Fraud
(18 U.S.C. § 1343)

From in or about August 2004 and continuing until on or about December 21, 2004, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant, **Joseph Kelly Lara a/k/a Nick DeAngelis Mancuso** ("the Defendant") knowingly and with intent to defraud devised a scheme and artifice to defraud the First State Bank of Thermopolis, Wyoming ("FSB") and to obtain money and property from FSB by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means

As the manner and means of the scheme and artifice to defraud, the Grand Jury adopts, re-alleges, and incorporates herein by reference all allegations set forth in Paragraphs 2 through 18 and 41 through 46 above.

### Wire Transmissions

On or about each of the dates set forth below, in the Dallas Division of the Northern District of Texas and elsewhere, the Defendant, for the purpose of executing the aforesaid scheme and artifice, did knowingly and with the intent to defraud cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds through and to the Northern District of Texas, each such transmission constituting a wire transfer of loan proceeds from FSB in Wyoming in approximately the amount set forth below, and each such transmission constituting a

separate count of this Indictment:

| Count | Date | Amount | Recipient |
|---|---|---|---|
| 8 | November 16, 2004 | $35,145 | Town East Ford<br>Chase Bank, NA<br>Account No. #######8366<br>Mesquite, Texas |
| 9 | December 21, 2004 | $170,000 | Atlantic Equity Investments, LLC<br>Account No. ########8565<br>Chase Bank, NA<br>Irving, Texas |

Each in violation of 18 U.S.C. § 1343.

COUNT TEN
Forfeiture Allegation
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

Upon conviction for any of the offenses alleged in Counts One through Nine of this Indictment, the defendant, **Joseph Kelly Lara a/k/a Nick DeAngelis Mancuso** ("the Defendant") shall forfeit to the United States any property, real or personal, constituting or derived from proceeds traceable to the respective offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and/or 18 U.S.C. § 982(a)(2)(A).

Pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), if any of the property subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) in combination with 28 U.S.C. § 2461, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States of America to seek forfeiture of any other property of the defendant up to the value of the above described property subject to forfeiture.

A TRUE BILL

_____
FOREPERSON

JAMES T. JACKS
ACTING UNITED STATES ATTORNEY

_____
ALAN M. BUIE
Assistant United States Attorney
Texas State Bar No. 00783751
1100 Commerce Street, Third Floor
Dallas, Texas  75242
Telephone: 214.659.8640
Facsimile: 214.767.4104
alan.buie@usdoj.gov

A true bill rendered

---------------------------------------------------------------------------------  FOREPERSON
DALLAS

Filed in open court this ___6___ day of MAY 2009

---------------------------------------------------------------------------------
                                                                        Clerk
DEFENDANT IN CUSTODY
---------------------------------------------------------------------------------
UNITED STATES DISTRICT/MAGISTRATE JUDGE
Criminal Case Pending : 3:08-CR-230-D



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

JOSEPH KELLY LARA
aka "Nick Deangelis Mancuso"

3:08-cr-230-D

SUPERSEDING INDICTMENT

18 U.S.C. §§  1348(1) and 1349
Conspiracy to Commit Securities Fraud

18 U.S.C. § 1348(1)
Securities Fraud

15 U.S.C. §§ 78j(b) and 78ff
Securities Fraud

18 U.S.C. §§ 1344 and 2
Bank Fraud

18 U.S.C. § 1344
Bank Fraud

18 U.S.C. § 1343
Wire Fraud

18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)
Forfeiture Allegation

10 Counts

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

ORIGINAL

**Related Case Information**

Superseding Indictment: [X] Yes [ ] No   New Defendant: [ ] Yes [X] No

Pending CR Case in NDTX: [X] Yes [ ] No   If Yes, number: 3:08-CR-230-D

Search Warrant Case Number _____

R 20 from District of _____

Magistrate Case Number: 3:08-MJ-220

1. **Defendant Information**

Juvenile: [ ] Yes [X] No

If Yes, Matter to be sealed:

[ ] Yes [X] No

Defendant Name _____ **JOSEPH KELLY LARA** _____

Alias Name _____ aka "Nick DeAngelis Mancuso" _____

Address _____

RECEIVED

MAY - 6 2009

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

County in which offense was committed: _____ Dallas

2. **U.S. Attorney Information**

Alan M. Buie _____   Bar # __00783751 _____

3. **Interpreter**

[ ] Yes [X] No    If Yes, list language and/or dialect: _____

4. **Location Status**

[X]  Already in Federal Custody
[ ]  Already in State Custody
[ ]  On Pretrial Release

5. **U.S.C. Citations**

Total # of Counts as to This Defendant:  10    [ ] Petty  [ ] Misdemeanor  [X] Felony

| Citation | Description of Offense Charged | Count(s) |
|---|---|---|
| 18 U.S.C. §§ 1348(1) and 1349 | Conspiracy to Commit Securities Fraud | 1 |
| 18 U.S.C. § 1348(1) | Securities Fraud | 2 |
| 15 U.S.C. §§ 78j(b) and 78ff | Securities Fraud | 3-4 |
| 18 U.S.C. §§ 1344 and 2 | Bank Fraud | 5 |
| 18 U.S.C. § 1344 | Bank Fraud | 6-7 |

18 U.S.C. § 1343                     Wire Fraud                                    8-9

18 U.S.C. § 981(a)(1)(C) and          Forfeiture Allegation                        10
28 U.S.C. § 2461(c)

Date  5 May 09                        Signature of AUSA: